**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LANSDOWNE CONSTRUCTION, LLC | ) | Case No. 18-11754-BFK |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| H. JASON GOLD, | ) | Adversary Proceeding |
| CHAPTER 7 TRUSTEE, | ) | No. 19-01056-BFK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| T & B ELECTRIC, L.L.C, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on cross-motions for summary judgment. The Defendant, T&B Electric, LLC ("T&B") filed its Motion on November 25, 2019. Docket No. 11. The Plaintiff-Trustee filed his Motion on November 26, 2019. Docket No. 13. The Trustee filed an Opposition to T&B's Motion on December 27, 2019. Docket No. 24. T&B did not file a separate Opposition to the Trustee's Motion, but the Court considers the Memorandum in Support of T&B's Motion to be an Opposition to the Trustee's Motion. At the hearing on January 10, 2020, the Court authorized the Trustee to file a Supplemental Memorandum. The Trustee filed a

Supplemental Memorandum on January 16, 2020. Docket No. 29. The matter is now ripe for a decision.[1]

For the reasons discussed below, the Court will: (a) grant the Trustee's Motion; and (b) deny T&B's Motion.

**Undisputed Facts**

The Court finds that the following facts are not genuinely disputed.

A.  *The Lansdowne-3 Boys Prime Contract.*

1.  In June 2016, Lansdowne Construction, LLC ("Lansdowne," or "the Debtor") entered into a Standard Form of Agreement as general contractor with 3 Boys, LLC, for the construction of a project known as Rosner Stafford Toyota on Garrisonville Road, in Stafford, Virginia. Tr. Ex. C.[2]

2.  The 3 Boys-Lansdowne Contract included the following provisions:

> **§ 9.3.1** At the time required by Article 5 of the Agreement, the Contractor shall submit to the Architect an itemized completed portions of the Work. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner, Owner's lender (if any) or Architect may require, including but not limited to copies of requisitions from Subcontractors and material suppliers and lien waivers from the Contractor and Subcontractors, and shall reflect retainage if provided for in the Contract Documents.

> **§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information, and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work. Should any lien

---

[1] T&B also filed a Supplemental Memorandum, which the Court did not authorize. Docket No. 30. The Court allowed the Trustee a Supplemental Memorandum to address a case cited by T&B at the hearing, which was not cited in T&B's Memorandum of Law (the *GEM Construction* case, discussed below). The Court will not consider T&B's Supplemental Memorandum.

[2] The Trustee's Exhibits will be referred to as "Tr. Ex. __." The Defendant's Exhibits will be referred to as "T&B Ex. __."

2

be filed against the Project or the Owner's property, the Contractor shall, within fifteen (15) days of such filing, discharge or bond off such lien at its sole expense, and indemnify the Owner from any loss, claim, expense or damage relating to or arising from such lien, provided the Owner has made payment to the Contractor with respect to the amount and Work to which the lien is related and excluding any Work for which the Owner has not made payment.

**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including but not limited to loss resulting from acts and omissions described in Section 3.3.2, because of
1. defective Work not remedied;
2. third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
3. failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;
4. reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
5. damage to the Owner or a separate contractor;
6. reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
7. failure to carry out the Work in accordance with the Contract Documents.

 **§ 9.5.3** If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.

3.      In August 2016, Lansdowne entered into a Subcontract with T&B for electrical work on the project. Tr. Ex. D.

4. In October 2016, 3 Boys assigned the Contract to Sheehy Stafford Property, LLC ("Sheehy"), when Sheehy purchased the property. Tr. Ex. AA (Consent to Assignment and Release).

5. On or about November 16, 2017, T&B submitted an invoice to Lansdowne in the amount of $30,250.00, which Lansdowne submitted as part of its Application No. 10. Tr. Ex. E. The Application was in the amount of $27,225.00, the amount of the T&B Invoice, less 10% retainage. *Id.*

6. On or about December 19, 2017, T&B submitted an invoice to Lansdowne in the amount of $8,990.00, which Lansdowne submitted as part of its Application No. 11. Tr. Ex. F. The Application was in the amount of $8,091.00, the amount of the T&B Invoice, less 10% retainage. *Id*.

7. On the same day, December 19, 2017, T&B submitted its Final Application for Payment, in the amount of $42,582.30. Tr. Ex. G. This Final Application included a Final Waiver of Lien and Unconditional Release. *Id.*, p. 6.

8. On or about March 27, 2018, Lansdowne submitted its Final Application for Payment, in the amount of $4,642.00. Tr. Ex. H; T&B Ex. G. This Application included a General Contractor Final Waiver of Lien and Conditional Release. *Id*., p. 9.

9. On April 19, 2018, T&B filed a Memorandum of Mechanic's Lien in the land records of Stafford County, claiming a mechanic's lien against Sheehy's property in the amount of $82,489.00. Tr. Ex. Q; T&B Ex. C.

10. On April 26, 2018, David Brooks of Lansdowne sent an e-mail to Brian Ganow of T&B notifying T&B that Sheehy was issuing joint checks to the subcontractors and that the joint checks were available for pickup from Sheehy's office. Tr. Ex. S.

11. Sheehy Auto Stores, Inc. ("Sheehy Auto Stores") issued a joint check payable to Lansdowne and T&B in the amount of $82,489.00. Tr. Ex. R. A representative of Lansdowne endorsed the check.[3]

12. Brian Ganow, the principal and owner of T&B stated in his Affidavit: "At no point did either myself or anyone representing T&B enter into any discussion with Lansdowne regarding a joint check agreement or execute such an agreement with Lansdowne." T&B Ex. E, Ganow Aff., ¶ 4.[4]

13. When T&B picked up the check, it executed and delivered a Certificate of Release of its Memorandum of Mechanic's Lien and a Final Lien Waiver. T&B Ex. D, pp. 2-3.

   B. *Lansdowne Files for Bankruptcy.*

14. On May 15, 2018, Lansdowne filed a Voluntary Petition under Chapter 7 in this Court. *In re Lansdowne Constr., LLC*, No. 18-11754-BFK (Bankr. E.D. Va. filed May 15, 2018). Mr. Gold was appointed as the Trustee. *Id.*, Docket No. 21.

15. On September 7, 2018, Sheehy filed a Consent Motion for Modification of the Automatic Stay. *Id.*, Docket No. 150.

16. In its Consent Motion, Sheehy represented that it owed the Debtor $534,139.48, subject to certain offsets for costs to complete the project ($24,000.00), and amounts that it had paid to the subcontractors so that it could obtain the releases of mechanic's liens ($276,464.87). *Id.*, Docket No. 150, ¶¶ 4-6.

---

[3] Sheehy Auto Stores, Inc., a Delaware corporation, is separately incorporated from Sheehy Stafford Property, LLC, a Virginia limited liability company. T&B Exs. B, F.

[4] T&B further asserted as an uncontested fact in its Memorandum: "At no time [did] T&B enter into a joint check agreement with either Lansdowne, 3 Boys or any other party." Docket No. 11, Def.'s Mem. of P. & A., p. 3. The Trustee does not dispute this as an uncontested fact. *See* Docket No. 13, Tr.'s Mem. in Supp., p. 3 "There was no written joint check agreement among the parties. *See* Motion, Exhibit E, Affidavit of Brian Ganow, at ¶ 4."

5

17.     Sheehy further alleged that an additional $334,347.30 was owed to subcontractors, and that therefore, there was no remaining balance due on its contract with Lansdowne. *Id.*, Docket No. 150, ¶ 8.

18.     On October 3, 2018, the Court entered a Consent Order Modifying the Automatic Stay so that Sheehy could accomplish its setoff and pay the remaining subcontractor claims. *Id.*, Docket No. 171.

19.     Sheehy filed a Proof of Claim in the amount of $634,812.17. *Id.*, Proof of Claim No. 86-1. In its Proof of Claim, Sheehy claimed that it had a right of setoff in the contract proceeds of $534,139.48. *Id.*, Proof of Claim No. 86-1, p. 5.

### Conclusions of Law

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) (proceedings to determine, avoid or recover preferences). The Defendant has consented to the entry of a final order resolving this adversary proceeding. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015); Docket No. 6, Pretrial Scheduling Order, ¶ 6 (requiring any objection to the entry of a final order by the Bankruptcy Court to be filed within 30 days of entry of the Scheduling Order and promptly set for a hearing).

Summary judgment may be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. FED. R. BANKRUPTCY P. 7056 (incorporating Rule 56 of the Federal Rules of Civil Procedure). The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts

demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (quoting FED. R. CIV. P. 1).

### I.    The Court Will Grant the Trustee's Motion.

Bankruptcy Code Section 547(b) permits the avoidance of a transfer where the transfer was:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (2018).

In this case, there is no genuine dispute that T&B was a creditor of the Debtor at the time of the transfer. The debts were antecedent debts. The Debtor is presumed statutorily to be insolvent within the 90 days preceding the case, and T&B has not raised a solvency defense. *See* 11 U.S.C. § 547(f). The transfer was made within 90 days of the bankruptcy filing. The Trustee has submitted an Affidavit, attesting to the fact that the payment enabled T&B to receive more than it would have received in a liquidation. Docket No. 13, Gold Decl., ¶¶ 9, 10.

The Court finds, therefore, that the Trustee has met his burden of proof on the elements of a preference under Section 547(b), subject to an examination of T&B's affirmative defenses, below.

**II.    T&B's Motion Will be Denied.**

T&B has raised four affirmative defenses. The Court will examine each defense, below.

*A.  The Payments Were Made by an Affiliate of the Owner.*

T&B argues first that because the check came from Sheehy Auto Stores, the Debtor suffered "no damages" as a result of the payment (this is a variant of the earmarking defense, discussed below). Clearly, though, the Debtor had a contractual right to payment from Sheehy, subject to any offsets by Sheehy, and had rights as a payee on the joint check. VA. CODE ANN. § 8.3A-110(d) (West 2019) ("If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.") Had Lansdowne refused to endorse the check, T&B could not have deposited it.

T&B's argument further would mean that Lansdowne could have sued Sheehy for breach of contract for payment of the $82,489.00, notwithstanding the payment by Sheehy Auto Stores.

8

Had Lansdowne done so, Sheehy Auto Stores could have sued T&B for unjust enrichment. T&B's argument has no support in the case law. If nothing else, the parties clearly intended the joint check to represent a credit on the balance owed by Sheehy to Lansdowne under their contract.

The Court rejects this argument as an affirmative defense.

*B. The Joint Check was Property of the Estate.*

T&B next argues that the payment cannot be considered a preference because it was by joint check, relying on *Mid-Atlantic Supply, Inc. of Virginia v. Three Rivers Aluminum Co. (In re Mid-Atlantic Supply Co.)*, 790 F.2d 1121 (4th Cir. 1986). In *Mid-Atlantic*, the Fourth Circuit held that a joint check was held in trust by the Debtor for the benefit of the joint payee, and therefore did not constitute property of the estate. Importantly, the Fourth Circuit noted that the supplier and the debtor entered into a written letter agreement for joint checks before the supplier started work on the project and before delivery of the goods. *Id*. at 1123 ("Lawson signed the required letter and TRACO then commenced work on the order.") The Fourth Circuit described this written agreement as "a valid, binding agreement, which both Mid-Atlantic and Lawson were estopped to revoke." *Id*. at 1127. The Fourth Circuit distinguished its holding from the Fifth Circuit's decision in *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962 (5th Cir. 1983), which came to opposite result. In *Sigma*, as in *Mid-Atlantic*, there was a letter agreement for joint checks. However, the Fifth Circuit described this agreement as "unilateral," placing no obligation on the debtor to endorse the checks, and allowing Sigma to withdraw its consent to the arrangement at will. *Sigma*, 790 F.2d at 1127.

More recently, this Court held that a joint check agreement entered into during the 90-day preference period was itself a preference and could be avoided under Section 547 of the Code.

9

*Gold v. Myers Controlled Power, LLC (In re Truland Group, Inc.)*, 588 B.R. 447, 457 (Bankr. E.D. Va. 2018) ("The Court does not see how a preference (the JCA) can save a preference (the payment"), *aff'd*, 604 B.R. 258 (E.D. Va. 2019).

In this case, T&B argues that the absence of an agreement for the issuance of joint checks is immaterial, that is, a joint check can never be a preference. T&B acknowledges that there was no joint check agreement in place. *See* Docket No. 11, Ganow Aff., ¶ 4 ("At no point did either myself or anyone representing T&B enter into any discussion with Lansdowne regarding a joint check agreement or execute such an agreement with Lansdowne.") If anything, the parties in this case agreed to a joint check arrangement contemporaneously with the issuance of the joint check on April 27, 2016. Before that, there was no discussion of payment by joint check, and no joint checks were issued to T&B at any time prior to the payment at issue. The Court does not see how T&B is in a better position than Myers Controlled Power, which had a written joint check agreement, albeit one entered into within 90 days of the bankruptcy filing.

The Court is unable to read the requirement for an enforceable, non-avoidable, joint check agreement out of the Fourth Circuit's holding in *Mid-Atlantic*. For these reasons the Court finds that the joint check defense does not save this transfer from avoidance under Section 547(b).

C. *Earmarking*.

T&B next argues that the funds provided by Sheehy Auto Stores were earmarked for payment to the Debtor. The Fourth Circuit has held that the earmarking defense only applies where "the debtor borrows money from one creditor and the terms of that agreement require the debtor to use the loan proceeds to extinguish specific, designated, existing debt." *In re ESA Envtl. Specialists, Inc*., 709 F.3d 388, 396 (4th Cir. 2013). The proceeds of an earmarked loan

never become property of the Debtor's estate whether or not the funds pass through the Debtor's hands, "so long as the proceeds are clearly 'earmarked.'" *Id*. Therefore, "no preference is created because the transfer does not diminish the value of the Debtor's estate." *Id*. at 395 (internal quotations omitted).

T&B produced no evidence that Sheehy Auto Stores made a loan to Lansdowne for the specific purpose of paying T&B. T&B argues, essentially, that one creditor (Sheehy Auto Stores) was substituted for another (T&B), and that therefore the Debtor's estate has not been diminished, relying on a pre-Code case, *Virginia National Bank v. Woodson (In re Decker)*, 329 F.2d 836, 839 (4th Cir. 1964). In *Decker*, the Debtor, Sterling Decker, was indebted to The People's National Bank of Charlottesville, predecessor to Virginia National Bank, for the sum of approximately $8,000.00 arising out of certain overdrafts in his account. Under the threat of criminal prosecution, Mr. Decker prevailed upon his sister, Vivian Decker, to pay the Bank the $8,000.00. The Fourth Circuit held that this was not a preference, as Vivian Decker, was substituted for the Bank as a creditor. *In re Decker*, 329 F.2d at 839-40 ("As a general rule, such a payment, in and of itself and without more, will not create a preference since there has been no diminution of value of the estate.")[5]

The Fourth Circuit clarified *Decker* in *ESA*. In *ESA*, the Debtor had contracts with the federal government for construction projects, which required it to post surety bonds. The surety bonds were issued by Hanover Insurance Company, which required ESA to post a letter of credit in the amount of $1.375 million. SunTrust Bank issued the letter of credit, but required ESA to

---

[5] One complication of the *Decker* case was that, when Vivian Decker loaned her brother the $8,000, she took an assignment of her brother's shares in a nonprofit corporation, the Berkley Community Swimming Pool Corporation. The Fourth Circuit held that this could have constituted a preference against the Bank, and remanded the case for a determination of the value of the shares. *Id*. at 840 (noting that the issue was "not what the creditor receives but what the bankrupt's estate has lost.")

11

maintain a Certificate of Deposit as collateral in the same amount. ESA borrowed the money from Prospect Capital to deposit with SunTrust. When ESA was forced to file for Chapter 11, Hanover drew on the letter of credit in the full amount, and SunTrust liquidated the Certificate of Deposit. The bankruptcy filing was within 90 days of the deposit of the $1.375 million with SunTrust (which, as noted, was borrowed from Prospect). The Trustee sued Hanover to recover this amount as a preference. Hanover asserted that: (a) the loan proceeds from Prospect were earmarked for its benefit; and (b) the transfer was a contemporaneous exchange for new value. The Bankruptcy Court dismissed the Trustee's Complaint on both grounds, and the District Court affirmed.

The Fourth Circuit affirmed, but approached the earmarking defense in a different way than the Bankruptcy Court and the District Court. The Fourth Circuit held that "the transfer from Prospect to ESA to SunTrust and later to Hanover lack[ed] a critical element of an earmarking defense: the funds at issue were not used to pay an antecedent debt." *In re ESA Envtl. Specialists, Inc.*, 709 F.3d at 396. In the course of its decision, however, the Fourth Circuit made it clear that in order for the earmarking defense to apply: (a) there must be a loan to the Debtor, and (b) the funds must clearly be earmarked for receipt by the ultimate transferee.

In this case, there is no evidence that Sheehy Auto Stores made a loan to Lansdowne so that Lansdowne could pay T&B. If anything, Sheehy Auto Stores made an intercompany loan to its affiliate, Sheehy, to pay T&B. Lansdowne simply endorsed the joint check. The fact that a joint check was issued does not, however, standing alone, satisfy the requirements for earmarking. *See Davis v. Best Supply Co. (In re WB Services, LLC)*, 590 B.R. 553, 561 (Bankr. D. Kan. 2018); *In re RJ Patton Co., Inc.*, 348 B.R. 618 (Bankr. D. Conn. 2006).

The earmarking defense is not available to T&B in the case because there is no evidence that Sheehy Auto Stores made a loan to the Debtor for the purposes of paying its debt to T&B.

D. *Contemporaneous Exchange for New Value.*

Finally, T&B asserts that the release of its Memorandum of Mechanic's Lien on the owner's property was a contemporaneous exchange for new value under Section 547(c)(1). The purpose of the § 547(c)(1) exception is "to encourage creditors to continue to deal with troubled debtors without fear that they will have to disgorge payments received for value given." *United Rentals, Inc. v. Angell*, 592 F.3d 525, 529 (4th Cir. 2010) (quoting 5 COLLIER ON BANKRUPTCY ¶ 547.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009)). As the Fourth Circuit has noted, "the key question is whether the alleged preferential transfer diminished the debtor's estate, i.e., whether the debtor in fact acquired a new asset that offset the loss in value to the estate when the debtor transferred existing assets to acquire the new asset at issue." *In re ESA Envtl. Specialists, Inc.*, 709 F.3d at 398. The party asserting a new value defense bears the burden of proof. *Id.*; *United Rentals*, 592 F.3d, at 531.

T&B argues first that the release of its Memorandum of Mechanic's Lien saved Lansdowne the cost of having to bond off its lien under Section 9.3.3 of Lansdowne's contract with the owner. This may be hypothetically true, but T&B has not presented any evidence of what it would have cost Lansdowne to bond off an $82,000.00 mechanic's lien. The new value defense applies only "to the extent that such transfer" was intended to be a substantially contemporaneous exchange, and was in fact a substantially contemporaneous exchange, for new value. 11 U.S.C. §547(c)(1). T&B's argument in this regard fails for lack of evidence.

13

More substantively, T&B argues that the release of its mechanic's lien avoided a setoff by Sheehy of the amount of T&B's lien, and therefore constituted value to the Debtor.[6] This argument is not without support in the case law. *See O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955 (9th Cir. 1989); *In re GEM Constr.*, 262 B.R. 638 (Bankr. E.D. Va. 2000). Accepting that the release of a mechanic's lien (or a surety bond claim) against the owner's property can constitute new value, the Court finds that the evidence in this case falls short of establishing new value *to the Debtor*. T&B argues that the release of its lien enabled the owner, Sheehy, to pay Lansdowne without a setoff for the amount paid to T&B. There is, however, no evidence that Sheehy paid Lansdowne anything after (or contemporaneously with) the payment to T&B. The only evidence that the Court has before it is that in the bankruptcy case Sheehy claimed, without contradiction, that its contract with Lansdowne was "upside down," that is, that Lansdowne as the general contractor owed Sheehy more than Sheehy owed to it. Even with the payment to T&B, and avoidance of a partial setoff, T&B has not met its burden of proof to demonstrate new value to the Debtor. *See In re GEM Constr.*, 262 B.R. at 645-46 ("the value given for the transfer must actually and in real terms enhance the worth of debtor's estate so as to offset the reduction in the estate the transfer caused.")

The Court finds, therefore, that T&B's new value defense fails.

## Conclusion

For the foregoing reasons, counsel for the Trustee will submit a separate, endorsed Order under which:

---

[6] The Trustee argues that there is no evidence that the parties actually intended the release of the lien to be a contemporaneous exchange for new value. *See* 11 U.S.C. § 547(c)(1)(A) ("intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value.") The Court finds that T&B has satisfied its burden here – the parties could not have had any other intent than that the payment would result in a release of the lien. Sheehy Auto Stores made the payment with the full expectation that the lien would be released, and T&B accepted the payment with the understanding that it would release its lien. For its part, Lansdowne endorsed the check with the expectation that Sheehy would pay T&B and T&B would release its lien.

14

    A.    Judgement will be granted to the Trustee on Count I (Preferential Transfer) and Count III (Recovery of Avoided Transfer) of the Trustee's Complaint in the amount of $82,489.00 with post-judgment interest accruing at the federal judgment rate from the entry of the judgment and costs.

    B.    Count II will be dismissed without prejudice.[7]

    C.    Count IV (Preservation of Property) will be dismissed as moot.

    D.    Count V (Disallowance of Claim) will be dismissed as moot.[8]

The Clerk of Court will mail copies of this Memorandum Opinion, or will provide cm-ecf notice of its entry, to the parties below.

Date: Feb 21 2020

Alexandria, Virginia

/s/ Brian F. Kenney

Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: Feb 21 2020

<u>Copies to</u>:
Valerie P. Morrison
Nelson Mullins Riley & Scarborough LLP
101 Constitution Avenue, N.W.
Suite 900
Washington, DC 20001
*Counsel for the Ch. 7 Trustee*

Richard G. Hall
7369 McWhorter Place
Suite 412
Annandale, VA 22003
*Counsel for the Defendant*

---

[7] The Court uses the term without prejudice here because, in the event that this ruling is reversed and remanded on appeal, the Trustee can re-state Count II.

[8] It does not appear that T&B filed a proof of claim in the case, based on a review of the Court's claims register.